Gilbert, J.
The prisoner has been convicted of murder in the first degree and sentenced to be hanged on the 6th proximo. This application is for the allowance of a writ of. error with a stay of proceedings upon the judgment. The time being short, I have-at the solicitation of the prisoner’s counsel consented to hear the application notwithstanding no bill of exception has as yet been settled, and for that reason the application could not regularly be made.
The counsel for the prisoner are mistaken in supposing that the prisoner is entitled to the writ of error as a matter of right. On the contrary, the statute especially provides that “writs of error upon judgments *375 rendered on any indictment for a capital offense shall not issue unless allowed by one of the justices of the supreme court upon notice given to the attorney-general, or to the district-attorney of the county where the conviction shall have been had” (2 Rev. Stat. 740, § 14). The power conferred by the statute to allow a writ of error in a capital case, is a high judicial power, and the. exercise of such power depends, not upon the discretion of the judge, but upon the particular case out of which such power arises. Before allowing the writ, the judge should be satisfied that there is probable cause at least, to believe that the appellate court would- reverse the judgment. To use the language *376 of Chancellor Walworth, in the People v. Colt, 1 Park. 611, “It is the duty of the officer to whom the application is made to disallow the writ if he has no reason to doubt the legality of the conviction.” Nor can I consider any alleged error, to which no exception was taken (People v. Thompson, 41 N. Y., 1). This remark seems proper, although I have discovered no such error in the case, because the prisoner’s counsel in the argument before me, went outside of the exception, and discussed many points which, under the rule stated, cannot be the subject of review.
The first exception urged is to the admission of the question put to the physician, whether the club with which the prisoner struck the deceased, could by one blow produce the results which he described on his examination as a witness. I think this was clearly competent. The physician had described the nature of the injury, and his professional experience enabled him to testify respecting the adequacy of the means which the prosecution alleged, produced it, and whether one or more blows with the club were necessary for that purpose.
The next exception is to the following question, put to the same witness: “Is it quite as likely that that blow might have been produced from a stone thrown against the skull as that it was produced by this wood?” This question was properly excluded, as it called for the opinion of the witness upon a mere probability without any basis of fact. While an expert may testify as to whether particular means are adequate to produce a given result, he cannot, any more than any other witness, be permitted to speculate upon mere hypothetical probabilities. The witness was permitted to testify he could not tell positively the nature of the instrument that caused the wounds on the head of the deceased; that any heavy instrument used with a sufficient degree of force might have caused either of *377 them; that the fracture of the skull could be produced by a blow from a Scotch ale bottle, or by a heavy stone thrown against the skull.
But there was no basis upon which he could form an opinion whether the blow might have been produced by the bottle or stone, as well as by the club, nor was it material, as he had expressed the opinion that either was adequate to produce the result.
The next exception is to the exclusion of an offer by the prisoner’s counsel to show that at or about the time of the offense, the prisoner and other parties were in the habit of frequenting the spot where it was committed at certain hours of the night, and of taking sticks and slapping playfully sleepers found in wagons near by, to show the want of premeditation on the part of the prisoner. This was properly excluded, because it included acts of parties other than the prisoner. But evidence of the same acts by the prisoner alone was admitted. I think no error was committed in this respect. These are all the rulings on the rejection or admission of testimony to which any exception was taken.
The prisoner’s counsel, at the conclusion of the charge of the court, requested the presiding judge to charge each of several propositions submitted by him. The court declined to charge further than it had already charged, and the prisoner’s counsel excepted.
I understand the rule to be well settled, that a judge is not required to charge the jury or to refuse to charge them specific propositions, but that it is quite sufficient, if he charges substantially upon the legal propositions as requested, so far as they are pertinent to the questions involved in the case (Holbrook v. U. & Sch. R. R. Co., 12 N. Y. [2 Kern.], 236; Bulkeley v. Keteltas, 4 Sandf., 450; First Baptist Church v. Brooklyn Ins. Co., 23 How. Pr., 448).
Upon a careful review I am unable to discover any *378 omission in this respect. Several of the requests did not relate to any rule of law, but asked for particular comments upon the testimony, and were very properly disregarded by the court.
It is urged that the court omitted to call the attention of the jury sufficiently to the distinguisning characteristics of murder and manslaughter. On that subject the judge said: “It is suggested on the part of the prisoner that this crime might be manslaughter in the second or third degree. The characteristics of manslaughter, as distinguished from murder, are: 1. Absence of intent to kill, and, 2. Using the means of death while in the heat of passion. It is for you to say whether there is evidence in the case to justify the jury in believing that there was any provocation producing heat of passion, or that heat of passion actually existed, or whether this affair, after all, was a cool and deliberate transaction.”
This, surely, was a substantial compliance with the request to charge on that subject. But if not, the case is barren of evidence to warrant the reduction of the crime from murder to manslaughter. Several exceptions were also taken to the charge as delivered. First to that part of the charge made with reference to the reasoning of the prisoner. On this subject the judge charged as follows: “Did he intend to kill or did he intend to inflict a serious wound which would come short of actual death ? Now, gentlemen, on this subject we are to assign a cause from its actual effects. If a man points a loaded pistol at another and fires it into a vital part of his body, what is there to prevent, the inference that he intended his death ? If a highwayman meets a man on the street and fells him to the ground with a cart rung or implement of that kind, for the purpose of committing robbery, what is the natural inference ? Is it with intent to despoil him merely that he might commit robbery, or does he in *379 tend to inflict the natural consequences of his blow ? It is not necessary that an assailant should go through a process of ratiocination on the subject. It is enough that he intended to inflict the blow and that the blow was such as must necessarily and naturally result in death. In such a case the jury is justified in drawing the natural inference which the facts justify. However, it. is for them to draw the inference. It is not for the court to instruct the jury what inference they shall draw from the facts.” It is difficult to perceive what valid objection can be made to this. If it needed authority for its support it may be found in Kenney v. People (27 How. Pr., 202), and in Regina v. Rothwell (Cox Crim. L. Cas., 145). It may be remarked- that the judge was not here defining the crime of murder as distinguished from manslaughter. That he did elsewhere. But he was illustrating what evidence was necessary to satisfy the jury of the intent to kill. Second. To that part of the charge with reference to the intent of the legislature, the court did express an opinion with reference to the probable intent of the legislature in allowing prisoners to be.witnesses in their own behalf, concluding as follows : “But it is their privilege to come on the stand, and it is for the jury to say what credence shall be given to their statement.” Whether the views of the court as to the probable intent of the legislature were correct or not is not the subject of review, nor is it material, because the credibility of the prisoner as a witness was properly submitted to the exclusive determination of the jury.
Third.—To that part of the charge with reference to the grade of the crime. On this subject the judge said: “ It presents a case, I think, although that is for you to determine, of unprovoked and atrocious murder, committed by somebody. The only serious question in the case is, whose hand caused the death of this man? Now, bear in mind, although the court ex *380 presses this opinion, it is for the jury to determine the question of fact.”
The decisions are so numerous that the mere expression of an opinion by a judge is not error, when he expressly submits it to the jury to determine the facts, that it cannot be necessary to cite them. It is a common practice in England for the court to express an unqualified opinion ; and although not so common here, it has been frequently done, and when questioned has been sustained. Whether a judge should do so or not, is a question to be determined by him in the conscientious discharge of his duty.
This disposes of all the exceptions taken to the charge, except that relating to the remarks of the judge, on the effect of intoxication upon the nature of the crime. The charge, in that respect, if it did not go farther than the prisoner had a light to demand, is fully sustained by authority (People v. Hammel, 2 Park. Cr., 223; Rodgers v. People, 15 How. Pr., 557; People v. Lannegan, 6 Park. Cr., 209).
The only remaining exception is that taken to the impanneling of the last juror. On the call of the jurors, all having been regularly drawn and summoned, there were several absentees whose names were not put in the box. The eleventh juror having been impanneled, the names in the box were exhausted. The clerk was then ordered to call the absentees, which being done, one only was present. He was ordered to take his place in the jury box, to which an exception was taken. The juror was challenged for principal cause and to the favor, and being found qualified took his seat and served as a juror. I do not think there was any error in this. But if, in any technical sense, it could be so considered, it could not have prejudiced the prisoner. There being but one name, had it been originally placed in the box it would have been drawn before or when it was, in fact, called, and it is immate *381 rial which would have happened. To have placed his name in the box when it was in fact called, as an absentee, would have been an idle and useless formality. The provision of the statute that the trial of an indictment shall not be affected by. reason of any defect or imperfection in matters of form, which shall not tend to the prejudice of the defendant, therefore, applies to this part of the case (2 Rev. Stat., 728, § 52).
Finally. If it were probable that any of the proceedings complained of were erroneous, the alleged errors bears so little and so remotely on the merits of the case that no court would be warranted in reversing the judgment.
To use the language of the court of appeals, “ whereas in the present case it is apparent and obvious that the supposed errors did not nor could not work either injury or injustice to the accused, they do not call for a reversal of the conviction.”
Having arrived at the conclusion that the prisoner was rightly and legally convicted, I cannot retard the execution of the sentence of the law. A judge who from sympathy for the accused or for any other cause should do so, would inflict an unjustifiable injury upon the public interests.
The application is therefore denied.
The application was subsequently renewed before a judge of the supreme court in the city and county of New York.
Fancher, J. The motion for a writ of error and stay is denied.
This is an application for a writ of error upon a judgment for a capital offense. The prisoner was convicted of murder in the first degree, and is sentenced to be hanged on Friday next. An application for the allowance of a writ of error and stay of execution was *382 made to the justice who presided at the trial, and was denied. Unless the writ be allowed, the prisoner cannot live until a review of the several questions raised on the trial shall be had before the general term of the supreme court. Yet a writ of error is not a matter of right in such a case. It can only be allowed by a justice of the supreme court, upon notice to the attorney-general or to the district-attorney of the county where the conviction was had ; and, if then, on examination of the case, there does not appear probable error, sufficient to induce an appellate court to reverse the judgment, the writ should be refused.
According to the practice under our statute (2 Rev. Stat., 740, § 14), any justice of the supreme court may allow the writ, and without regard to the fact that an application for it has been denied by another justice of the court. In other words, a decision adverse to the prisoner on such an application, is not regarded as res adjudicata; nor, as in civil cases, is it regarded as improper for one justice to hear and decide upon the application, because another justice has already decided a similar application in the same case. If 1 could have avoided the duty and responsibility of hearing the application for the writ, on the ground that a similar application had been denied by another judge, I should have done so. But I am informed by the learned presiding justice of the first judicial department, what I had before heard, that applications in such cases have been made to several judges, one after another, and, in some instances, the writ has been granted by one judge, after a refusal to allow it by another.
Unpleasant as the duty may be, it must, therefore, pe performed, and the merits of the application must be examined. It was said by Chancellor Walworth, in the Colt case, that it is the duty of the officer to whom the application is made to allow the writ if he has reason to doubt the legality of the conviction. *383 It has been said by other learned judges, that before allowing the writ the judge should be satisfied that there is probable cause to believe that error occurred on the trial sufficient to induce the appellate court to reverse the judgment.
If, on looking into the bill of exceptions, I discover nothing to create a reason for doubt of the legality of the conviction, the allowance of the writ should be refused ; in other words, if, on diligent examination, the bill of exceptions shall disclose no probable error, sufficient, in my opinion, to induce the appellate court "to reverse the judgment, I am, doubtless, bound to refuse the writ and the stay of the execution.
The first ground of error chiefly relied on by the counsel for the prisoner, in his powerful argument before me, is that portion of the charge of the learned judge before whom the prisoner was tried, respecting the probable intention of the legislature in enacting the late statute which allows a person accused of crime to be a witness in his own behalf. I was much impressed by the argument of counsel on this point. But I have attentively and repeatedly read the remarks of the learned judge in this respect, as contained in the bill of exceptions, and I do not think they contain any substantial error. What he said as to the intention of the legislature touching the statute allowing prisoners to testify, was so appropriately qualified as not to withdraw from the jury whatever credence they should find it proper to give to the testimony of the prisoner in this case. He distinctly charged the jury that it was the privilege of prisoners to come on the stand and give their version of the facts, and that it was for the jury to say what credence could be given to the statement. He cautioned the jury to discriminate between what was fact and what was not in the testimony of prisoners as of other witnesses, so as to, arrive substantially at the truth. Now, this qualification of what *384 had been observed by the learned judge as to the probable intention of the legislature in passing the statute referred to, was so explicit and correct, that the minds of the jury could not have been diverted from the true considerations in the case, nor could the prisoner have been improperly prejudiced by the remarks of the judge as to the intention of the legislature.
The next important point relied on by the prisoner’s counsel in the argument before me, arises on his exception to that part of the charge as to the intention of the prisoner when he struck the blow, which is alleged to have caused the death of Donohue. Upon the point of premeditation or design to kill, the learned judge said to the jury: “It is not necessary that an assailant should go through a process of ratiocination on the subject; it is enough that he intended to inflict the blow, and that the blow was such as must necessarily or naturally result in death. In such a case the jury are warranted in drawing the natural inference which the facts justify. However, it is for them to draw the inference. It is not the part of the court to instruct the jury what inference they shall draw from the facts.” These remarks of the judge are objected to and criticised by the prisoner’s counsel; but I fail to see anything exceptional in them. They certainly correspond with the tenor of many decisions touching the question of premeditation. Moreover, the judge at the trial was exceedingly considerate of the rights of the prisoner on this important point, for, in the same immediate connection, bearing upon the design to kill, he charged the jury thus : “ There is evidence here that this prisoner was on friendly terms with the deceased. That the jury may consider.” It was the duty of the judge to charge the jury upon this vital question of intent, and in view of the facts disclosed by the evidence, I do not see how he could have charged more appropriately than he did. His remarks are certainly sustained by *385 authority (Kenney v. People, 27 How. Pr., 202; Regina v. Rothwell, Cox Crim. Cas., 145).
In the same connection, the validity of an exception to the charge as to intoxication was pressed by the counsel for the motions After the charge had been apparently concluded, and the prisoner’s counsel had made some requests to charge certain propositions, the judge said: ‘ ‘ One thing I omitted inadvertently to instruct you on, in respect to the prisoner’s condition as to intoxication. Intoxication is no excuse for crime. You are to consider his condition under any circumstances that will throw any light on what was his actual intent. If the jury can see anything arising out of this case, that would qualify the general rule of law that a drunken man is to be judged by the same rule of law as a sober man, they will give it effect. I am not aware of anything I can call your attention to, to throw light on that subject.” In this case there was abundant evidence to show that the mind of the prisoner at the time of this homicide was not either destroyed or eclipsed by intoxication. There were no facts in the case to warrant a charge from the judge to the effect that the prisoner was so intoxicated as to be incapable of forming a design to kill. Upon the testimony of all the witnesses who observed the killing of Officer Donohue, this prisoner knew what he was about. He had uttered the threat that if the officer came along he would ‘ lay him out.’ He took the iron bar from the store of McGoldrick, and when required to give it up, asked McGoldrick to find something else, stating that he must have something. He then took from the store of McGoldrick the club, and proceeded with it to the place near the coal-box where he had stood with the iron bar. While standing there he is heard by two witnesses to remark, ' If that son of a bitch comes along, I will,’ or ‘ we will, lay him out.’ Two other witnesses testify that he said, “ If Officer Donohue comes *386 along, the son of a bitch, I will kill him.” That officer did soon come along, and instantly the prisoner emerges from his position and dealt him the blow which felled him to the sidewalk; from which spot, whether again "struck by the prisoner or others it is perhaps doubtful, he is carried away to die.” There was no room, on these facts, and on the version of his own conduct as given by the prisoner himself on the trial, for the judge to have made any more favorable charge touching the prisoner’s intoxication, or the effect of intoxication on his intent, than was made. This remark will be fully corroborated by the authorities on the subject (People v. Hammel, 2 Park., 223; People v. Lannigan, 6 Park., 209; Rodgers v. People, 15 How. Pr., 557).
The counsel for the prisoner strenuously insists that the judge went beyond his province and invaded that of the jury when he undertook at the beginning of his charge to characterize the nature of the prisoner’s crime upon which, on the evidence, the -jury had the right to pass. After a brief statement of the facts of the case, the learned judge said, “It presents a case, I think, although that is for you to determine, of unprovoked and atrocious murder committed by somebody. The only serious question of the case is, -whose hand caused the death of this man?” These remarks are severely criticised by counsel, and it is argued that on them the court determined the degree of crime as that of murder, whereas the facts would allow the jury under a proper charge to find the crime to be manslaughter ; and, at all events, it predetermined the question of intent, which it was the sole duty and province of the jury to determine. There are two answers to this argument; first, it was only the opinion of the judge, guarded and qualified by the remark that the jury were to determine, and not the court, whether the case was one of unprovoked and atrocious murder *387 and secondly, the judge, with great clearness and precision, instructed the jury what constituted the crime of murder in the first degree, and what were the distinguishing elements of the crime of manslaughter. There is little or no ground for saying that the jury were misled by the opinion which the judge expressed. Whether the judge should, in such cases, express his individual opinion, must depend very much on the circumstances and a sound discretion. I have often heard judges express their opinion in charges to juries, but where they have guarded the expression of it by proper instruction as to the duty of the jury, I have never known an exception to the expression of the opinion to be regarded as of any importance.
In the course of his charge, the learned judge told the jury that as to the guilt of the act it made but very little difference, in a moral or legal point of view, whether the blow was inflicted by one or the other of the three persons who were present at the homicide; and he further remarked that “if the prisoner’s statement is correct, that when Denvers suggested to him if Donohue should come along he should be ‘ laid out,’ it infused the idea into his mind; and if, in pursuance of that, he struck one blow, and Denvers another, and Ritchie another, they were all principals in the transaction, and all equally guilty of murder.” This portion of the charge is assailed on the ground that the indictment, under which the prisoner was tried, charges the killing of Donohue by a single blow, struck with a bar or club by the prisoner. In the bill of exceptions the following words immediately succeed the portion of the charge just recited: “Although, as the indictment does not charge that offense, the prisoner cannot be convicted on that ground.” When the whole of this portion of the charge is perused, it will, as I think, appear entirely unobjectionable, if not favorable to the prisoner. In the first place, it distinctly advises the *388 jury that if the prisoner’s version of the transaction be correct, then he cannot be convicted as an accessory with Denvers and Ritchie, nor as a principal with them, because the indictment has not charged such an offense. In the next place, this portion of the charge shut up the jury to find that the blow struck with the club by the prisoner was the cause of the death of Donohue; and thus . the remarks objected to were favorable to the prisoner, in the event of the jury attaching any credit to the prisoner’s version of the transaction, or to the evidence which bore upon the conjecture that other blows than that struck by the prisoner with the club, may have caused the death of Donohue. I think, therefore, that no. available exception can be predicated of this portion of the charge.
It was argued by the counsel for the prisoner that some of the propositions which he requested the judge to charge, were legal propositions pertinent to the case, and should have been charged as requested. The court declined the 'request except as already charged. I have looked through these requests, and while it is true that some of them are proper and couched in different language than that employed by the court, still, I think, all the substantial parts of the propositions were covered by the charge. So far as the material questions involved in the case were concerned, the charge of the court appears to me to embrace them all. Nor do I find anything in the exceptions to the rulings of the court respecting the evidence, which, in my judgment, should induce an appellate court to reverse this conviction.
It would be a reproach to the administration of justice if such an enormous crime as the killing of that unoffending officer Donohue should not be avanged. When the perpetrator of, or as this prisoner confesses himself, the participator in, such an offense against the laws of God and man, has had a fair and *389 properly conducted trial, and has been found guilty of murder by a jury of his peers, the impending punishment of the law should not be stayed. The law of the land declares it shall not be stayed unless, on a review of the case, there is ground to believe an appellate court would, for some error on the trial, reverse the judgment. I see no probable cause to suppose that an appellate court would grant to this prisoner a new trial; and terrible as are the consequences to him, I feel constrained to deny his application for the allowance of a writ of error.
Motion for allowance of writ of error and stay is denied.